UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAGMA COLLAZO,**<br><br>                                  **Plaintiff,**<br><br>v.<br><br>**PRIME FLIGHT OF DE, INC., d/b/a PRIME FLIGHT AVIATIONS SERVICES, INC., et al.,**<br><br>                                  **Defendants** | 19-cv-21312 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

    This matter comes before the court on the defendants' motion to compel arbitration. (DE 7.)  Citing *Atalese v. U.S. Legal Services,* 219 N.J. 430, 99 A.3d 306 (2014), Plaintiff argues that an Arbitration Agreement she signed is void because, although it explicitly waives the right to bring a lawsuit in court, it does not specifically refer to waiving the right to trial by a jury. For the reasons expressed herein, I find that this agreement to arbitrate is enforceable.

    The plaintiff, Dagma Collazo, was employed as an Operations Manager by defendant PrimeFlight of DE, Inc., d/b/a PrimeFlight Aviation Services, Inc. ("PrimeFlight"). In connection with her employment, which started on February 6, 2017, she signed an Arbitration Agreement which states that "you must arbitrate any and all employment-related claims against the Company and that you may not file a lawsuit in court . . . ." [1] On April 22, 2019, PrimeFlight terminated her employment. Thereafter, she sued PrimeFlight and a supervisor, claiming that she was fired because she took legitimate medical

---

[1] A copy of the Arbitration Agreement is attached as Exhibit A to the Certification of Christin Salerno in Support of Defendants' Motion to Compel Arbitration. (DE 7-4 at 5.) In their briefs, both sides discuss the Arbitration Agreement, the authenticity of which is not disputed.

1

leave.[2] The currently operative First Amended Complaint (""1AC", DE 1) asserts four causes of action: disability discrimination under the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 *et seq.*; unlawful retaliation under NJLAD; violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and aiding and abetting under NJLAD.

There is no substantial issue as to the execution of the Arbitration Agreement, and the parties do not dispute that these four claims fall within the scope of "employment-related claims" under the Agreement. The key issue is whether the Arbitration Agreement, because it does not refer specifically to trial by a jury, is unenforceable under *Atalese.*

### I. The Arbitration Agreement

Shortly before she was hired and began work, Collazo electronically signed an Arbitration Agreement. It reads, in its entirety, as follows:

> **Arbitration Agreement**
>
> **Notice to all Applicants and Employees of PrimeFlight Aviation Services, Inc.**
>
> **[1]** Individuals who wish to be considered for employment by PrimeFlight Aviation Services, Inc. ("the Company") must read and accept the terms of the following Dispute Resolution Agreement. If you desire to do so, you may stop the process at this point and take the time to review these materials further. You must, however, complete the online Agreement, along with your application, if you wish to continue the application process and if you wish to be employed by the Company. All persons who apply for employment with the Company after November 30, 2011, and those who become employed as a result of such application, are required to agree to the Dispute Resolution Agreement below.
>
> **Dispute Resolution Agreement**
>
> **[2]** You and the Company recognize that differences may arise between you that cannot be resolved without the assistance of an outside party. Both you and the Company agree to resolve any and

---

[2]   The complaint was filed in New Jersey state court, but removed to this Court by the defendant. (DE 1.)

all claims, disputes or controversies arising out of or relating to your application for employment, your employment with the Company, and/or the termination of your employment exclusively by arbitration to be administered by a neutral dispute resolution agency agreed upon by the parties at the time of the dispute. If you and the Company cannot agree, the American Arbitration Association ("AAA") will administer the arbitration pursuant to its applicable Rules. Copies of AAA's Rules are available on AAA's website (www.adr.org). Some, but not all, of the types of claims covered are: unpaid wages, overtime, or other compensation; discrimination or harassment on the basis of race, sex, age, national origin, religion, disability or any other unlawful basis; breach of contract; unlawful retaliation; wrongful discharge; employment-related tort claims such as defamation; and claims arising under any statutes or regulations applicable to employees or applicable to the employment relationship, such as the Age Discrimination in Employment Act, the Family and Medical Leave Act, or the Fair Labor Standards Act. Claims not covered are those claims seeking injunctive or declaratory relief due to allegations of unfair competition, unfair business practices, the unauthorized disclosure of trade secrets or confidential information, or the breach of covenants restricting the business activities of the Company or employees. The Agreement does not affect or limit Employee's right to file an administrative charge with a state or federal agency such as the National Labor Relations Board or the Equal Employment Opportunity commission, and it does not cover claims relating to whistleblowers and/or unlawful retaliation arising under the Sarbanes-Oxley Act. You and the Company agree that this Agreement shall be enforceable pursuant to and interpreted in accordance with the provisions of the Federal Arbitration Act.

**[3]** The Arbitrator shall have the authority to award the same damages and other relief that would have been available in court pursuant to applicable law. The Arbitrator will have the authority to limit discovery and other pretrial processes to what is necessary for a prompt and inexpensive resolution of the dispute. Absent a showing of substantial need by either party or an inability to pursue or defend certain claims the Arbitrator shall limit discovery to 25 interrogatories/document requests per party and to two depositions per party It is expected that the arbitration hearing will be held within 180 days of the appointment of the Arbitrator. The

AAA Rules will govern the allocation of costs between the parties and the course of the proceedings unless otherwise agreed. The Arbitrator shall not have the authority to add to, amend, or modify existing law or to alter the at-will status of the relationship between you and the Company. Because this Agreement is intended to resolve the particular dispute as quickly as possible, the Arbitrator shall not have the authority to consolidate the claims of other employees into a single proceeding, to fashion a proceeding as a class, collective action, or representative action, or to award relief to a class or group of employees. The Arbitrator shall have the authority to consider and rule on dispositive motions such as motions to dismiss or motions for summary judgment in accordance with the standards and burdens generally applicable to such motions in federal district court, except that the Arbitrator may establish appropriate and less formal standards and procedures for such motions at the Arbitrator's discretion consistent with the expedited nature of arbitration proceedings. The Arbitrator may issue subpoenas to compel the attendance of witnesses at the arbitration hearing and to compel the production of documents during discovery and shall do so upon reasonable request of either party.  The Arbitrator shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to, any claim that any part of this Agreement is unenforceable, void, or voidable.

**[4]** For the purposes of the scope of the obligation to arbitrate, "Company" shall include PrimeFlight Aviation Services, Inc., and all subsidiary companies, related companies, trade names, and alleged joint employers, as well as their respective office[r]s, directors, managers, and employees (current and former).

**[5]** If any provisions of AAA's Rule or of this Agreement are determined by the Arbitrator or by any court of competent jurisdiction to be unlawful, invalid, or unenforceable, such provisions shall be severed or modified so that the Agreement may be enforced to the greatest extent permissible under the law. All remaining terms and provisions shall continue in full force and effect. This Agreement may be modified or terminated by the Company after thirty days written notice to you. Any modifications or terminations shall be prospective only and shall not apply to

any claims or disputes that are pending in arbitration or that have been initiated by either party.

**[6] <u>SPECIAL NOTE:</u>** This Agreement and the Rules referenced above are important documents that affect your legal rights. You should familiarize yourself with and understand them, and, accepting below, you acknowledge that you have had the opportunity to do so. You may wish to seek legal advice or to consult with private legal counsel before signing this Agreement.

**[7]** By acknowledging and by accepting employment with the Company if it is offered, you agree to be bound to this dispute Resolution Agreement, as does the Company. You understand that, as more fully set forth above, you must arbitrate any and all employment-related claims against the Company and that you may not file a lawsuit in court in regard to any claims or disputes covered by this Agreement.

● **I have read and accept the terms of this agreement**

○ **I have read and do not accept the terms of this agreement**

**Accepted On: 1/20/2017 12:29:53 PM**

("Arbitration Agreement", DE 7-4 at 5 (bracketed **[#]** paragraph numbers added for ease of reference))

## II. Discussion

### A. Standards

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, creates a strong federal policy in favor of arbitration. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178–79 (3d Cir. 1999) (noting that FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes."). The Act authorizes a party to enforce a valid arbitration agreement by moving to compel arbitration. 9 U.S.C. §§ 2-4; *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012).

Arbitration is a matter of contract between parties, so a judicial mandate to arbitrate must be predicated on the parties' consent. *Guidotti v. Legal Helpers Debt Resolution*, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)).

When a district court is presented with a motion to compel arbitration, the Court must (a) determine whether the agreement to arbitrate is valid, and then (b) decide whether the dispute falls within the agreement's scope. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009).

The issue here is one of (a) the arbitration agreement's validity. The Third Circuit has held that a Court, when deciding a motion to compel arbitration, should apply a summary judgment standard, *i.e.,* should determine whether there are genuine, material issues of fact requiring trial. *See generally Guidotti*, 716 F.3d at 773–74; Fed. R. Civ. P. 56(c). Here, although the defendant has placed facts before the Court in the form of affidavits, most are not essential to the resolution of the case. The issue raised by the plaintiff essentially requires application of the *Atalese* legal principles to the face of the agreement itself, and therefore may be decided on the existing record. *See generally Par-Knit Mills*, 636 F.2d at 54 n.9.

### B. *Atalese*

The issue before the Court is governed by New Jersey contract law, either as it has been, or as this Court predicts it would be, decided by the New Jersey Supreme Court.[3] Under New Jersey law, "An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" *Atalese*, 99 A.3d at 313 (citation omitted). "When a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected." *Stelluti v. Casapenn Enters., LLC*, 203 N.J. 286, 1 A.3d 678, 690 (N.J. 2010). A plaintiff's claims are subject to arbitration so long as the arbitration clause at issue gives sufficient "notice to all parties to the

---

[3] *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920 (1995). New Jersey contract law, however, is constrained by the principle that the State may not, consistent with the FAA, give less favorable treatment to arbitration agreements than it does to other contracts. *See Kindred Nursing Ctrs. LP v. Clark*, 137 S. Ct. 1421 (2017).

agreement that claims involving jury trials would be resolved instead through arbitration." *Martindale v. Sandvik*, 173 N.J. 76, 800 A.2d 872, 884 (N.J. 2002).

"An enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms." *Morgan v. Sanford Brown Inst.*, 225 N.J. 289, 137 A.3d 1168, 1180 (N.J. 2016) (citing *Atalese*, 99 A.3d at 313). "This requirement of a 'consensual understanding' about the rights of access to the courts that are waived in the agreement has led [New Jersey] courts to hold that clarity is required." *Moore v. Woman to Woman Obstetrics & Gynecology, L.L.C.*, 416 N.J. Super. 30, 37, 3 A.3d 535 (App. Div. 2010) (alteration added and citation omitted). Such clarity is required to "assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." *Marchak v. Claridge Commons, Inc.*, 134 N.J. 275, 282, 633 A.3d 531 (1993); *see also Morgan*, 137 A.3d at 1180 (noting that right to civil jury trial is guaranteed by New Jersey Constitution. (citing N.J. Const. art. I, ¶ 9)).

*Atalese*, the New Jersey Supreme Court case cited by both sides, held that "mutual assent" to an arbitration agreement requires that the parties be placed on explicit notice that they are waiving their right to have claims adjudicated in a court of law. 99 A.3d 312–13. "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights," the Court held, but the "waiver-of-rights language . . . must be clear and unambiguous—that is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum." *Id.* at 314–15.

In *Atalese*, the plaintiff contracted with the defendant for debt-adjustment services. *Id.* at 309. The contract contained a clause providing for the resolution of any dispute between the parties through arbitration. The arbitration provision did not, however, explicitly state that the plaintiff was waiving her right to seek relief in court.[4] The plaintiff later sued, alleging

---

[4] The *Atalese* arbitration clause read as follows:

violations of state consumer protection statutes. The defendant moved to dismiss the complaint and compel arbitration. *Id.* at 309–10.

The New Jersey Supreme Court held that this arbitration provision was insufficient, because it failed to inform the plaintiff that she was waiving the right to bring a lawsuit: "The absence of *any* language in the arbitration provision that plaintiff was waiving her statutory right to seek relief in a court of law renders the provision unenforceable." *Id.* at 309 (emphasis in original). In reaching this conclusion, the Court recognized that mutual assent requires that the parties understand the "terms to which they have agreed." *Id.* at 313 (citing *Knorr v. Smeal*, 178 N.J. 169, 177, 836 A.2d 794 (2003) ("An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights.")). Thus *Atalese* required that a waiver of rights clause "be clear and unambiguous." *Id.* at 314.

*Atalese* arose in the context of a consumer fraud action. It is a truism, the Court observed, that "[b]y its very nature, an agreement to arbitrate involves a waiver of a party's right to have her claims and defenses litigated in court." *Id.* at 313. Nevertheless, "an average member of the public may not know -- without some explanatory comment -- that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." *Id.*

---

> **Arbitration**: In the event of any claim or dispute between Client and the USLSG related to this Agreement or related to any performance of any services related to this Agreement, the claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request on the other party. The parties shall agree on a single arbitrator to resolve the dispute. The matter may be arbitrated either by the Judicial Arbitration Mediation Service or American Arbitration Association, as mutually agreed upon by the parties or selected by the party filing the claim. The arbitration shall be conducted in either the county in which Client resides, or the closest metropolitan county. Any decision of the arbitrator shall be final and may be entered into any judgment in any court of competent jurisdiction. The conduct of the arbitration shall be subject to the then current rules of the arbitration service. The costs of arbitration, excluding legal fees, will be split equally or be borne by the losing party, as determined by the arbitrator. The parties shall bear their own legal fees.

*Id.* at 310.

The more recent case of *Kernahan v. Home Warranty Adm'r of Fla., Inc.*, 236 N.J. 301, 199 A.3d 766 (2019) stopped short of a categorical ruling that the rule in *Atalese* applies only to consumer contracts. Still, it relied substantially on the "consumer fraud" aspect of *Atalese*. *Kernahan* held that the arbitration clause at issue was "too confusing and misleading to meet simple plain wording standards demanded by the public policy of this state for consumer contracts." 199 A.3d at 778. The *Atalese* decision, as *Kernahan* saw it, was guided "by twin concerns":

> First, the Court was mindful that a consumer is not necessarily versed in the meaning of law-imbued terminology about procedures tucked into form contracts. . . . The decision repeatedly notes that it is addressing a form consumer contract, not a contract individually negotiated in any way; accordingly, basic statutory consumer contract requirements about plain language implicitly provided the backdrop to the contract under review.
>
> And, second, the Court was mindful that plain language explanations of consequences had been required in contract cases in numerous other settings where a person would not be presumed to understand that what was being agreed to constituted a waiver of a constitutional or statutory right.

*Id.* at 777. In *Atalese,* the *Kernahan* Court reiterated, "[t]he consumer context of the contract mattered." *Id.*

Subsequent cases have sometimes declined to apply the *Atalese* standard. They have generally done so, however, in the context of negotiated contracts between commercial entities.[5]

---

[5] *See Victory Entm't, Inc. v. Schibell*, 2018 N.J. Super. Unpub. LEXIS 1467, at *10-11, 21-23 (App. Div. June 21, 2018) (rejecting application of *Atalese*, and compelling arbitration where provision at issue simply stated that disputes "shall be submitted to binding arbitration" and contract at issue was not "a consumer contract" that involved "average members of the public"); *Columbus Circle NJ, LLC v. Island Constr. Co., LLC*, 2017 N.J. Super. Unpub. LEXIS 606, at *5-7 (App. Div. Mar. 13, 2017) (rejecting application of *Atalese* to contract at issue which was not "a consumer contract of adhesion where one party possessed superior bargaining power and was the more sophisticated party."); *Gold Mine Jewelry Shoppes, Inc. v. Lise Aagaard Copenhagen*, 240 F. Supp. 3d 391, 397 (E.D.N.C. 2017) (declining to apply *Atalese* to retailer agreement executed between two corporations); *Emcon Assocs. v. Zale Corp.*, No. 16-1985 (FLW), 2016 U.S. Dist. LEXIS 172721, at *1 (D.N.J. Dec. 14, 2016)

9

The employment-related contract in this case pertains to a major life decision; a person would naturally give it more attention than, say, the fine print in a car rental contract. Nevertheless, this is not a contract between two businesses. On one side is a corporation, but on the other is an individual job seeker. While this agreement is not literally a consumer contract, it is a take-it-or-leave-it form drafted by the company. It is not subject to negotiation, and indeed the company refuses even to consider the employment application unless the applicant first signs the Arbitration Agreement. (Arbitration Agreement ¶ 1.) I think that the New Jersey Supreme Court would apply the more exacting *Atalese* standard here.

In the plaintiff's view, that *Atalese* standard requires that an arbitration agreement disclose, not merely that the signer is waiving the right to seek relief in court, but is specifically waiving a *jury* trial. For that proposition, she relies heavily on a single reference in *Atalese*:

> We do not suggest that the arbitration clause has to identify the specific constitutional or statutory right guaranteeing a citizen access to the courts that is waived by agreeing to arbitration. But the clause, at least in some general and sufficiently broad way, *must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute.*

99 A.3d at 315–16 (emphasis added).[6] That reference—which, by its terms, requires only disclosure in "some general and sufficiently broad way"—must be

---

(finding that *Atalese* has been limited to consumer and statutory employment discrimination contexts, and contract at issue involved commercial transaction between two sophisticated entities) (citing *Gastelu v. Martin*, 2015 N.J. Super. Unpub. LEXIS 1639, at *14 (App. Div. July 9, 2015) ("Parties to a commercial contract can express their intention to arbitrate their disputes rather than litigate them in court, without employing any special language. . . . In the present case . . . we are dealing with commercial business transaction and, therefore, the standard is not as stringent [as the one put forward in *Atalese*].")); *cf. Van Duren v. Rzasa-Ormes*, 394 N.J. Super. 254, 257, 926 A.2d 372 (App. Div. 2007) (enforcing arbitration agreement "between two sophisticated business parties, each represented by counsel"), *aff'd o.b.*, 195 N.J. 230, 948 A.2d 1285 (2008).

6  Defendants, for their part, commit a similar error in placing far too much stress on the word "or" in the emphasized passage. The *Atalese* court was probably not suggesting that the drafter of an arbitration agreement could simply choose either

understood in the context of the repeatedly-expressed rationale of *Atalese*: that the plaintiff be clearly informed that an arbitration and a court proceeding are two different things; that the former is a substitute for the latter; and that, by agreeing to arbitration, she is giving up the right to sue.

Consider the following passages, all from *Atalese,* identifying the flaw which made that arbitration agreement unenforceable—*i.e.,* the failure to disclose that the plaintiff was waiving the "right to seek relief in court":

> "The provision made no mention that plaintiff waived her right to seek relief in court." *Id.* at 309 (emphasis added).
> 
> • "The absence of any language in the arbitration provision that plaintiff was waiving her statutory right to seek relief in a court of law renders the provision unenforceable." *Id.*
> 
> • "Nowhere in the arbitration clause is there any explanation that plaintiff is waiving her right to seek relief in court for a breach of her statutory rights." *Id.* at 315.
> 
> • "The clause here has none of the language our courts have found satisfactory in upholding arbitration provisions—clear and unambiguous language that the plaintiff is waiving her right to sue or go to court to secure relief." *Id.*

Now it is true, of course, that many employment-related causes of action might entitle a plaintiff to opt for a jury (depending on the rules of the particular state and such factors as the dollar amount involved and whether damages as opposed to equitable relief are sought). The law cannot require a simple and clear statement, intelligible to the lay person, and simultaneously require that the agreement anticipate all of the rights associated with a trial that would necessarily be waived. This is an arbitration clause, not a guilty

---

option. What would it mean, for example, to disclose that the plaintiff is giving up the right to a jury trial, but *not* her right to bring her claims in court? Such a formulation might plausibly be interpreted as a limited jury waiver, rather than an arbitration agreement.

plea allocution. What is important is that the signer understand that by opting for arbitration, she is giving up the right to sue in court.

Cases interpreting arbitration clauses, or the arbitration clauses cited therein, sometimes do refer to trial by jury, and Plaintiff cites some examples. *See, e.g., Martindale v. Sandvik, Inc.,* 173 N.J. 76, 800 A.2d 872 (2002) (upholding arbitration clause in which plaintiff agreed "to waive [her] right to a jury trial").[7] Such references, I believe, tend to conflate waiver of a "court trial" with waiver of a "jury trial." That is generally a harmless conflation, given that a civil claim for damages would ordinarily entitle a plaintiff to demand a jury. In those cases, however, I believe the reference to a "jury trial" is surplusage. The cited cases do not discuss or turn on the distinction between a waiver invoking the right to a jury trial and one that does not. And as the *Atalese* court stated, "[w]e do not suggest that the arbitration clause has to identify the specific constitutional or statutory right guaranteeing a citizen access to the courts that is waived by agreeing to arbitration." *Moon v. Breathless, Inc*, 868 F.3d 209, 214 (3d Cir. 2017) (quoting *Atalese*, 99 A.3d at 315). I have not been directed to a case that strikes down an agreement to arbitrate under *Atalese* because it waives a court trial, without mentioning a jury specifically.

The clear overall sense of *Atalese* is that no particular form of words is required, but that the arbitration clause must clearly convey the concept that the plaintiff "is choosing to arbitrate disputes rather than have them resolved in a court of law." *Id.* at 447. I predict that the New Jersey Supreme Court, if presented with this Arbitration Agreement, would find it an enforceable waiver of trial, despite the lack of a specific reference to a *jury* trial.

Appellate Division cases interpreting *Atalese* confirm the rule that I adopt here. Those cases, many involving employment contracts, have upheld

---

[7] *See also Curtis v. Cellco Partnership,* 413 N.J. Super. 26, 33, 992 A.2d 795 (App. Div. 2010) (citing Verizon Wireless customer agreement, containing an arbitration clause disclosing that "the Rules in arbitration are different. There's no judge or jury. . . ."). The Verizon agreement also provides that, should the arbitration clause be held unenforceable and the matter should go to court, the parties agree to waive a jury. It is therefore natural that the waiver language should refer to a jury specifically.

12

arbitration clauses that waive trial without referring to a jury trial in particular. It is clear enough that the waiver of *every* kind of court trial encompasses a waiver of a *particular* kind of court trial, *i.e.,* a jury trial. And an ordinary reader, even a legally unsophisticated one, would so understand it:

> Although the arbitration language here did not specifically contain a provision regarding waiver of a jury trial, we conclude its explicit waiver of the right to 'maintain a court action' would clearly include the right to a jury trial.

*Stutheit v. Elmwood Park Auto Mall*, No. A-4915-17T2, 2018 WL 6757030, at *3 (N.J. App. Div. Dec. 26, 2018) (enforcing arbitration provision in contract entered into between an "average member of the public" and an automobile dealership).[8]

On-point authority is also available in the form of a decision by the Hon. Claire C. Cecchi enforcing the very Arbitration Agreement at issue here. *See Roundtree v. PrimeFlight Aviation Services, Inc.,* No. 16-9609, 2017 WL 4698070 (D.N.J. Oct. 19, 2017). Judge Cecchi held that this Agreement sufficiently apprised those plaintiffs that they were giving up their right to sue in favor of

---

[8] Other Appellate Division cases uphold arbitration agreements not referring to waiver of a jury trial, albeit without discussion of the issue plaintiffs raise here. *See Brownlee v. Town Sports Int'l Holdings, Inc.*, No. A-0816-17T4, 2019 WL 149645, at *2 (N.J. App. Div. Jan. 8, 2019) ("By accepting an offer of employment or by continuing employment with TSI, you agreed, as a condition of employment that all Covered Claims are subject to arbitration, not trial in court."), *certif. denied*, 238 N.J. 421 (2019); *Jade Apparel, Inc. v. United Assurance, Inc.*, No. A-2001-14T1, 2016 WL 5939470, at *4 (N.J. App. Div. Oct. 13, 2016) ("It is the express intention of the parties to resolve any disputes arising under this Agreement without resort to litigation. . . . All disputes . . . shall be settled amicably by good faith discussions among all of the parties hereto, and, failing such amicable settlement, finally determined exclusively by binding arbitration."); *Kamensky v. Home Depot U.S.A., Inc.*, No. 0930-14T4, 2015 WL 5867357, at *3 (N.J. App. Div. Sept. 29, 2015) ("Read the following Arbitration Provision ('Provision') Carefully. It Limits Certain Of Your Rights, Including Your Right to Obtain Relief or damages Through Court Action."); *Jaworski v. Ernst & Young U.S. LLP*, 441 N.J. Super. 464, 481, 119 A.3d 939 (App. Div. 2015) ("Unlike the arbitration clause struck down in *Atalese,* here, [Defendant] EY's written ADR policy unambiguously provides . . ., *'[n]either [EY] nor an Employee will be able to sue in court in connection with a Covered Dispute.'* Therefore, the Program complies with *Atalese* and plaintiffs' arguments to the contrary are without merit.") (emphasis in original).

13

an arbitral forum. In doing so, she specifically held that the Agreement's failure to make specific reference to trial by jury did not render it unenforceable:

> In submitting their employment applications, Plaintiffs were required to acknowledge their understanding that they "must arbitrate any and all employment-related claims against" Defendant and that they "*may not file a lawsuit in court* in regard to any claims or disputes covered by" the Arbitration Agreement. . . . "Even a person of common knowledge, but without higher formal education, might very well understand that if one waives access to a court, one has waived access to a jury."

*Id.* at *4 (emphasis in original; quoting *Emergency Physicians of St. Clare's, LLC v. Proassurance Corp.*, No.09-6244, 2010 WL 3311861, at*6 (D.N.J. Aug.19, 2010)).

Of course, courts have also upheld arbitration clauses that *did* "address[] specifically a waiver of the right to a jury trial, *augmenting* the notice to all parties to the agreement that claims involving jury trials would be resolved instead through arbitration." *Martindale*, 800 A.2d at 883 (emphasis added). There is usually no harm in "augmenting" the required notice. I hold, however, that a specific invocation of a jury trial is not required, so long as the distinction between arbitration and litigation, and the plaintiff's waiver of the latter, is clearly expressed.

This Arbitration Agreement clearly states that Ms. Collazzo is giving up her right to sue in court and must pursue employment-related claims through arbitration. After some prefatory language, the first operative words are these:

> Both you and the Company agree to resolve any and all claims, disputes or controversies arising out of or relating to your application for employment, your employment with the Company, and/or the termination of your employment exclusively by arbitration to be administered by a neutral dispute resolution agency agreed upon by the parties at the time of the dispute.

(Arbitration Agreement ¶ 2.) The Agreement lists the kinds of claims that are and are not covered. (*Id.*) It then describes the applicability of the AAA rules; the powers of the Arbitrator; the streamlining of procedures; and other

14

procedural matters in arbitration. (*Id.* ¶ 3). Under the bold, underlined heading **SPECIAL NOTE** it warns the plaintiff that the Agreement affects legal rights and that the plaintiff should review it carefully and obtain legal counsel if she wishes to do so. (*Id.* ¶ 6.)

The very last sentence of the Arbitration Agreement, directly above the signature line, is this:

> You understand that, as more fully set forth above, you must arbitrate any and all employment-related claims against the Company and that *you may not file a lawsuit in court* in regard to any claims or disputes covered by this Agreement.

(*Id.* ¶ 7 (emphasis added).)

That is sufficient under *Atalese.*

### III. Conclusion

Defendants' motion to compel arbitration (DE 7) is granted. All claims will be referred to arbitration. In the meantime, this action will be administratively terminated without prejudice.

Dated:  July 13, 2020

/s/ Kevin McNulty
_____
**Kevin McNulty**
**United States District Judge**